The declaration in ejectment herein is as follows: *Page 968 
 "TELFAIR STOCKTON, MILLER HALLOWES DANCY and CAROLINE MARY HALLOWES, by their attorneys, sue the ATLANTIC COAST LINE RAILROAD COMPANY and JACKSONVILLE AND SOUTHWESTERN RAILROAD COMPANY in an action of ejectment:
 Because the defendants are in possession of a certain tract or parcel of land situate, lying and being in Duval County, Florida, known and described as follows, to-wit:
 Beginning at a point on the West line of the Seaboard Air Line Railway (formerly Fernandina and Jacksonville Railroad) right-of-way 225 feet South of the intersection of said West line of the Seaboard Air Line right-of-way and a line known as the Campbell Lawton compromise line shown in Deed Book A. I. page 291, former public records of Duval County, Florida, and running thence in a Westerly direction along a line parallel to said Campbell Lawton Compromise line for a distance of about 1497.2 feet, to the East line of Main Street, thence in a southerly direction along said East line of Main Street for a distance of 54.98 feet, thence in an Easterly direction by a straight line to a point on the West line of the Seaboard Air Line Railway right-of-way 327.17 feet South of said Campbell Lawton Compromise line; thence North along said West line of the Seaboard Air Line Railway right-of-way for a distance of about 102.17 feet to the point of beginning; excepting therefrom a long triangular piece of ground bounded on the West by Main Street, on the South by the South line of the parcel above described, and on the North by the North right-of-way line of the Atlantic Coast Line Railroad main line right-of-way; containing about 2.385 acres, to which said plaintiffs claim title, and the said defendants have received the profits of said land since the 1st day of January, A.D. 1925, of the yearly value of $500.00, and refuses to deliver possession of said land to the said plaintiffs, or to pay them the profits thereof."
A demurrer to the declaration was overruled and defendants filed a plea of the general issue, not guilty, and a special plea to which latter plea a demurrer was sustained. *Page 969 
Demurrers to an amended special plea and to a second amended special plea were sustained.
The court directed a verdict for the plaintiffs and rendered judgment thereon. After judgment, on motion, the verdict directed by the court was amended by the court to include a statement required by the statute that the plaintiffs "are the owners in fee simple" of the property sued for.
In the order amending the verdict it is stated:
 "the jury was directed by the Court to render a verdict for the Plaintiff's, and it further appearing that the omission of the words" and that they are the owners in fee simple" was through inadvertence in the preparation of the form of the verdict under the direction of the Court, and that there has been adduced no evidence in this cause to warrant a verdict other than the verdict of the Jury as herein and hereby amended, and it further appearing from all the evidence as a conclusion of law that the plaintiffs are entitled to no other estate than a fee simple estate in the premises claimed."
The defendants took writ of error.
On October 1, 1878, Winborn J. Lawton, owner of the land, had a "Plat of W. J. Lawton's subdivision of a plat of the 'Sibbald Grant' at the junction of Trout Creek with the St. Johns River and now called "Panama Park," recorded in Book A-B, page 560 of the public records of Duval County. The map shows a plat of land divided into lots. Lots 58, 25 and 24 shown immediately above and along the southern line of the plat. Lot 57 lies above and along the northern line of lot 58 in the southwestern portion of the plat. Lot 26 lies north of lot 25 and lot 23 lies north of lot 24. The plat shows lot 58 to be 238 feet north and south at its eastern end and 195 feet north and south at its western end. Lot 57 is shown to be 200 feet north and south, and lies immediately north of lot 58. It seems that subsequent to the record of the Panama Park plat the F J R. R. (now Seaboard) track was constructed north *Page 970 
and south through lots 57 and 58 and those above them near their east end leaving a small part of lots 58, 57, 56 etc., east of the railroad track.
On November 3, 1879, Lawton conveyed to Mrs. T. E. Troutman, "Lot 58, of W. J. Lawton's Subdsn. of a pt. of the Sibbild Grant * Plat recdd. in Book A-B pg. 560." Lots 23 and 24 were conveyed to Johanna McDonald. On February 15, 1882, Campbell and Griffin, owners of the "Walker Tract" lying south of "Panama Park," agreed with Lawton in establishing a compromise boundary line between the two tracts of adjoining lands, which agreed boundary line runs east and west through lot No. 57 of the Panama Park plat leaving the southern part of lot 57 and all of lot 58, south of the agreed boundary line; but the Panama Park plat was not changed, and lot 58 was referred to in subsequent conveyances, there being no other lot 58 in Panama Park or Panama Park tract. The compromise boundary line agreement refers to "the Panama Tract" as having been conveyed to Lawton. Lawton, having conveyed lot 58 to Mrs. Troutman before the agreed line was established between the Panama Park tract and the Walker tract, she conveyed to Campbell and Griffin, owners of the Walker tract, not the lot conveyed as Lot 58 as stated in the compromise line agreement between Lawton and Campbell and Griffin, but all east of the Panama road and west of the F J R. R. (Seaboard Ry.) lying south of a line running east and west 225 feet south of the agreed boundary line between the Panama Park. tract and the walker tract, and also all that portion of lot 58 lying east of F J R. R. not involved here. Campbell and Griffin conveyed to Mrs. Troutman that portion of lot 58 west of the F J R. R. (Seaboard Ry.) lying north of a line 225 feet south of the agreed line between. Panama Park tract and the Walker tract. Lot 58 Panama Park tract is shown to be partly south and partly north of the line running east and west 225 feet south of the compromise *Page 971 
boundary line between the Panama Park tract and the Walker tract. Campbell and Griffin, owners of the Walker tract, conveyed to Harvey and Harvey conveyed to Charles E. Bell by the same northern boundary, viz., a line running east and west 225 feet south of the compromise line between Panama Park and the Walker tract. The land in controversy is shown to be north of the southern boundary of lot 58 of the Panama Park tract, and south of a line 225 feet south of the agreed compromise boundary line between the Panama Park tract and the Walker tract. The agreed location of the boundary line between the Panama Park tract and the Walker tract did not destroy the identity of lot 58 of the Panama Park tract, the southern boundary of which lot 58 was surveyed and located on the ground.
It was stipulated "that the title to the lands involved in this suit and described in the plaintiffs' declaration herein was vested in fee simple in Charles E. Bell on the 28th day of February A.D. 1893."
The conveyance from Harvey to Charles E. Bell, February 23, 1893, covered land lying south of a line running east and west from a point 225 feet south of the agreed dividing line between the Panama Park tract and the Walker tract. The conveyance from Bell to Telfair Stockton and Albion W. Knight contained a similar north boundary line. Albion W. Knight conveyed to Caroline M. Hallowes his undivided half interest in the land described in the conveyance from Bell, with a statement in the deed of conveyance that "The land hereby conveyed is bounded on the north by the Panama Park tract" etc. At her death Carolina M. Hallowes devised her interest to the plaintiffs Dancy and Hallowes. An abstract of a deed of conveyance from Telfair Stockton and Caroline M. Hallowes to the J. and S.W. railroad company, the predecessors of the A. C. L. RR. Co., gives the northern boundary of the land conveyed as "Beginning 33 feet west of *Page 972 
center line of the Seaboard track, Northern division, on south boundary of Lot 58 of Panama tract, thence west along said lot line 1550 feet to Panama Road; thence South," etc. Panama tract is shown to be the "Panama Park" tract referred to in the muniments of title and in the record. Due to the irregular size of lot 58, its south boundary is at its eastern end more than one hundred feet, and at its western end much less than one hundred feet south of the line running east and west 225 feet south of the agreed compromise dividing line between the Panama Park tract and the Walker tract.
The defendants claim as their northern boundary under their conveyance from Stockton and Hallowes, a line 225 feet south of the compromise boundary line between the Panama Park tract and the Walker tract, while the plaintiffs contend that their deed to the defendants by its terms conveys only land that is south of the south boundary of lot 58 of Panama tract, the land in controversy being between the south line of lot 58 and a line running east and west 225 feet south of the compromise boundary line between the Panama Park tract and the Walker tract. The compromise boundary line runs through lot 57 of Panama Park, leaving the southern half of lot 57 and all of lot 58. south of the compromise line. But lot 58 was recognized in subsequent conveyances and has been surveyed and located on the ground. As lot 57 extended about 200 feet north and south, and as lot 58 was at its eastern end more than 225 feet north and south, a line drawn 225 feet south from the compromise boundary line running through lot 57 and making the agreed line between the Panama Park and the Walker tracts, will stop more than a hundred feet north of the eastern end of the south boundary line of lot 58, but much less than a hundred feet north of the south boundary of lot 58 at its western end. The conveyance to the defendants covers only land south of the south boundary of lot 58 of Panama tract, which is the same as *Page 973 
Panama Park tract, therefore such conveyance is not evidence of defendants' title to land north of the south boundary of lot 58, Panama tract; and such deed of conveyance was properly excluded as evidence of title in the defendants. Thus the defendants failed to show any title to the land sued for that is north of the south line of lot 58, and verdict for the plaintiffs was properly directed they having shown title in themselves.
There is no real ambiguity in the designation of the northern boundary line of the land conveyed by Stockton and Hallowes to the defendants; and there is no such ambiguity in the complainants' chain of title as to justify a consideration of matters other than the deed of conveyance to the defendants for a proper determination of the effect of such conveyance, the south boundary of lot 58 of Panama tract being located and such lot being shown to be the same as lot 58 Panama Park tract. The defendants showed no title to the land sued for except their claim under such deed of conveyance to them, and that conveyance by its terms and as a matter of law, covers only land south of the "south boundary of lot 58 of Panama tract," which south boundary line of lot 58 is located on the ground.
Courses, distances and areas referred to in other deeds of conveyances do not affect the plainly described north boundary of the land conveyed by Stockton and Hallowes to the railroad company, such north boundary beginning "on South boundary of lot 58 of Panama tract; thence west along said lot line 1550 feet to Panama Road; thence south" etc., which "south boundary of lot 58 of Panama tract," is located on the ground. Lot 58 Panama tract is shown to be lot 58 Panama Park tract.
The conveyance from Bell to Stockton and Knight included land up to a line 225 feet south of the agreed compromise "dividing line between what are known as the "Panama Park" tract and the "Walker tract." Knight *Page 974 
conveyed to Hallowes an undivided one-half interest in the land described in the deed of conveyance from Bell to Stockton and Knight, also said to be "bounded on the north by the Panama Park tract." But the north boundary line of the land conveyed by Stockton and Hallowes to the defendants, is "on south boundary of lot 58 of Panama tract," which leaves the land in controversy north of the north boundary of the land conveyed to the defendants by Stockton and Hallowes, and south of the north boundary of the land conveyed by Bell to Stockton et al. This shows title in Stockton, Dancy and Hallowes, and not in the defendants below.
The plaintiffs in error insist that in the conveyance from Stockton and Hallowes to the railroad company the description of the northern boundary as being "on south boundary of Lot 58 of Panama tract" should be controlled by the statement in the conveyance from Knight to Hallowes that "The land hereby conveyed is bounded on the north by the Panama Park tract," and by the references in other deeds to Panama Park tract and Panama tract, it being contended that in agreeing to the compromise boundary line between the Panama Park tract and the Walker tract, the parties established a Panama tract as distinguished from the Panama Park that was platted by Lawton; and that the line 225 feet south of the compromise boundary line was treated by the parties to the several conveyances as the south line of lot 58 "Panama tract". This contention is not sustained by the record. The first description in the deed from Knight to Hallowes is "an undivided one half interest in and to that certain tract of land in the Sibbold Grant as described in deed from Charles E. Bell, dated February 28, 1893, and recorded in Book 85 page 39 Duval County Records" with exceptions not material here.
The description of the northern boundary of the land conveyed by Bell to Stockton and Knight is from a stated *Page 975 
point northerly "to the dividing line between what are known as the 'Panama Park' tract and the 'Walker tract' thence west thirteen hundred and five (1305) feet to the east line of the roadway of the Fernandina and Jacksonville Railway, thence south along said east line two hundred and twenty five (225) feet, thence west fifteen hundred and fifty (1550) feet to the 'Panama Road' " etc.
This makes the northern line 225 feet south of the agreed boundary between the Panama Park tract and the Walker tract. There is nothing to show that the parties regarded the line 225 feet south of the agreed boundary line as the boundary line between the Panama tract and the Walker tract.
The deed to Stockton and Knight referred to in the Knight deed, made the line 225 feet south of the agreed line, the northern boundary of the land conveyed by the Bell deed; and the added description in the Knight deed to Hallowes that "The land hereby conveyed is bounded on the north by the Panama Park tract" is sufficient to convey to Hallowes title at least up to the line 225 feet south of the agreed line between the Panama Park tract and the Walker tract. But the deed of conveyance by Stockton and Hallowes to the railroad company expressly made the northern boundary of the lands conveyed to be "on South boundary of lot 58 of Panama tract" and it is shown that such south boundary of lot 58 is as located on the ground considerably south of the line 225 feet south of the agreed line between the Panama Park and the Walker tracts.
Affirmed.
WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.
BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment. *Page 976